PENDLETON, President,
delivered the resolution of the court.
This is truly stated to0 be a stale transaction, commencing in 1752: It was the administration of a small estate which was devised in 1765, and yet no account is settled • by, the executors till after all their deaths in 1786, when a partial one is made up by the executors of the survivor.
This had-a bad aspect respecting the executors; but since no fraud or misconduct is imputed to them-in the management of the estate, nor any apparent advantage, which they could, or did derive to themselves from the omission, but on the contrary a probable disadvantage, in having articles disallowed for defect in the proof, which they might have justified at an earlier period, we inclined to attribute it to inattention in them, *and confidence cm the part of the legatees in their integrity, rather than to any impure motives, and therefore think it would be too severe to deny them justice on account of that - omission of a duty; for .such perhaps it is, although the law only directs them to render accounts when desired.
1 When the children came of age, they might make private adjustments of the accounts with the executors, to their satisfaction,, without reducing them to form. This appears to have been the case as to Edward Jones the principal acting executor, from 1752 to 1758, who never "made up any account with the court, yet, till before the Auditor’s in 1796, we hear of no complaint on that head; on the contrary, the defendant acknowledges that' he received all his wifes part of the estate, except any money which might appear to be in the hands of Richard Jones.
With these’ impressions, the court proceeded to examine the justice of the case, and think the "decree right ' as to the two articles discussed in court, disallowing the £77. 15., as not sufficiently proved, though probably just arid allowing ‘ the items for thequitrents.
Mr. Wickham was right in his position that joint obligations survive as well as joint rights, ‘but it’does not apply; since here was no existing obligation, whén the survivorship took place'.
The testator provided a fund in the hands of his executors to pay these quitrents, which they .yearly applied accordingly, and *262 are allowed those payments as a set off against that fund; to the surplus of which, the defendant was entitled one-fourth.
We then considered the claim of the executors for commissions and interest on his balance.
The commissions are disallowed, because a reward is devised to the executors by the will.
*But interest is allowed, because it is natural justice that he who has the use of another’s money should pay interest for it. -
It was objected that the executor had the use of the money previous to 1774 without accounting for interest; a just objection, if true. We examined the account from 1759, when Richard’s administration commenced, to 1762, when Williams ■ married; the balance then in Richard’s hands was ¿£125. 14. 10.; he paid ¿£83. 15. 3., and from that time the estate was in his debt to 1774. It is true the disallowance of articles now turns that balance against him, so. as to reduce the ¿£100. advanced in 1774 to :£53. 13.-4., on that balance as an agreed loan, the plaintiff ought to have interest. There is therefore error in not allowing that interest. ■ And the decree must be reversed with costs. And a'decree entered for ¿£53., and interest from July 29th 1774, and the other reservations in the decree.